## GILLESPIE v. YONKERS R. CO.

(Supreme Court, Appellate Division, Second Department.  October 2, 1903.)

1. STREET RAILROADS—ALIGHTING FROM CAR—NEGLIGENCE—QUESTIONS FOR JURY.

A street car conductor, after being notified of plaintiff's desire to transfer, left the car just before reaching the place of transfer. Plaintiff was familiar with the locality, and knew where the cars usually stopped for transfer. The car, on reaching the place, stopped, and plaintiff started to leave it; but, it having started, she remained standing until it stopped a second time. While attempting to alight, it was suddenly started without any warning, and she was thrown to the street. Plaintiff did not notify the motorman of her intention to alight. There was nothing to indicate that the car had stopped for any purpose other than the transfer of passengers. *Held* to require the submission to the jury of the question whether plaintiff was negligent.

Appeal from Trial Term, Westchester County.

Action by Margaret J. Gillespie against the Yonkers Railroad Company. From a judgment for defendant, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

John F. Coffin, for appellant.
Edward D. O'Brien, for respondent.

HIRSCHBERG, J. The learned counsel for the respondent states the facts of this case in his brief (omitting reference to the folios of the printed case) as follows:

"The action was brought to recover damages for personal injuries alleged to have been sustained by the plaintiff on September 27, 1900, in alighting from a car of the defendant near the junction of Elm street and Palisade avenue in the city of Yonkers. The claim was that the plaintiff, who was riding on an Elm street car, asked for and was given a transfer for a Park avenue car on Palisade avenue. When the car reached the vicinity of Palisade avenue, plaintiff attempted to alight. The conductor was not then on the car, but had gotten off just before it came to a stop, and the plaintiff had noticed this fact. The car, having stopped but temporarily, proceeded on again, and the plaintiff waited until it came to a second stop. While in the act of alighting she alleges that the car suddenly accelerated its speed, causing her and her four year old daughter, whom she was assisting, to fall to the street. There is considerable confusion in the plaintiff's testimony as to the exact place where the accident happened, and it is not clear from her testimony whether she fell before the car got to the tracks on Palisade avenue or afterwards. However, it appeared distinctly that, at the time she attempted to alight, the conductor was not on the car, and that plaintiff did not notify either the conductor or motorman of her intention to alight. Nor was there any evidence from which it could be inferred that they were aware of her intention."

While this statement of the facts is not strictly accurate, there is enough contained in it to indicate that the question upon which the learned trial justice based the nonsuit, viz., the plaintiff's contributory negligence, was one of fact, and not of law. When the plaintiff asked the conductor for a transfer, and was given one by him, he was notified of her intention to leave the car when it reached the place where passengers were usually transferred. As Mr. Justice Leventritt, writing for the Appellate Term in Schaefer v. Central Crosstown R. Co., 30 Misc. Rep. 114, 115, 61 N. Y. Supp. 806, said:

"In the case at bar the car had stopped at a corner where it was usual for it to halt to permit transfer to connecting cars. The conductor had issued a transfer to the plaintiff for this crossing, and should be presumed to have known that she desired to alight at the place for which the transfer was given."

Here, however, the conductor, after being notified that the plaintiff desired to transfer, had left the car just before the point of transfer was reached, and she was obliged to depend chiefly upon her own experience and judgment in determining where it would be safe and proper to alight. The accident occurred shortly before 8 o'clock in the evening, when it was not very dark, and the streets were lighted. The plaintiff was familiar with the locality, and had transferred there many times before. The car on which she was riding was going through Elm street; the Park avenue car to which she was to transfer passed through Palisade avenue; and the usual point of transfer was, of course, the junction of the two streets. She was sitting in the car with her mother and her daughter, and testified that the "car stopped before it came to the switch, and at the place where it usually stopped to let passengers off to transfer." She further testified:

"I had transferred at that corner before, at the same place. I knew where the place was on Elm street, near Palisade avenue, where the car stopped to let off passengers who wanted to transfer to the Park avenue car. I had gotten off at that place many times before. I know where the switch is just below that point where the car stops to let passengers off. I know there is a switch there. I know that the car stops to let people off who want to transfer to the Park avenue car before they reach that switch. I know that is the rule."

Her mother also testified that "when the car reached the place of transfer, corner of Palisade avenue and Elm street, it stopped." It was then that the plaintiff arose and started toward the rear of the car with her little girl, but, the car having started, she remained inside, holding onto the door, until it again stopped, after going a distance of about a car length. The car having then stopped a second time, she opened the door and went out on the platform, and while she was in the act of alighting from the steps the car was suddenly started again, without signal or warning, and she was thrown into the street. At the time the car stopped on the second occasion there was no person or vehicle visible in the street in front of it, and nothing tending to indicate that the car had stopped for any purpose other than to afford an opportunity to transfer to passengers intending to do so.

In reviewing a judgment entered upon a nonsuit, the plaintiff is entitled to the most favorable view which the evidence warrants.

Stuber v. McEntee, 142 N. Y. 200, 205, 36 N. E. 878. The absence of the conductor left her measurably to her own resources, and if she was thereby put to an election between acting upon the reasonable appearance of things, indicating that the car had stopped for her convenience, or submitting to the inconvenience of being carried by the place of transfer, it was a proper question for the jury whether her adoption of the alternative exhibited a want of ordinary care. Filer v. N. Y. C. R. Co., 49 N. Y. 47, 10 Am. Rep. 327. In other words, it was for the jury to say whether the appearance of things justified the plaintiff in acting as she did. Kimber v. Metropolitan Street R. Co., 69 App. Div. 353, 74 N. Y. Supp. 966. She might, of course, in the exercise of extreme caution, have endeavored in some way to communicate with the motorman for a verification of the apparent fact that he had stopped the car for the transfer of passengers; but it surely cannot be said, as matter of law, that so high a standard of care is usually imposed upon themselves by trolley travelers similarly situated. The judgment should be reversed.

Judgment reversed and new trial granted; costs to abide the event. All concur.